UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EZRA SHELTON #455919, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:17-cv-00681 |
| | ) JUDGE TRAUGER |
| WARDEN CAROLYN JORDAN, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Ezra Shelton, a state prisoner confined in Riverbend Maximum Security Institution in Nashville, Tennessee, has filed a pro se civil rights action under the authority of 42 U.S.C. § 1983, alleging a violation of his constitutional rights. (ECF No. 1.) The plaintiff has also submitted an application to proceed *in forma pauperis* ("IFP"). (ECF No. 2.) Because it appears from the plaintiff's submission that he lacks sufficient financial resources from which to pay the full filing fee in advance, the court **GRANTS** the motion (ECF No. 2) to proceed IFP in this matter.

**I.    STANDARD OF INITIAL REVIEW**

Pursuant to 28 U.S.C. § 1915(e)(2), the court is required to conduct an initial review of any complaint filed IFP and to dismiss the complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*,

551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "a court cannot create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. Jan. 31, 2011).

The plaintiff seeks to vindicate alleged violations of her federal constitutional rights under 42 U.S.C. § 1983. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

## II. FACTUAL ALLEGATIONS

The plaintiff alleges and has attached documents to his complaint that demonstrate that he was accused of assaulting a fellow inmate with a homemade knife at Turner Trousdale Correctional Center (TTCC) on December 13, 2016. In a disciplinary report created on December 15, a prison staff member stated that the plaintiff was a "confirmed blood" and that he and two others were caught on camera stabbing an inmate who was a "confirmed crip." (ECF No. 1, at 23.) On December 14, TTCC staff, with the approval of the warden and the assistant commissioner of the Tennessee Department of Correction, placed the plaintiff on administrative segregation pending investigation into the assault and his participation in security threat group ("STG") activity. (ECF No. 1, at 16.) The plaintiff was then transferred to Riverbend. Riverbend held a hearing on the disciplinary charge against the plaintiff on January 10, 2017, and he was found not guilty because TTCC had failed to forward the evidence against him. (ECF No. 1, at 26–27.) However, he was kept on administrative segregation. He was given a periodic administrative segregation review on January 13, 2017 (30 days from the date of his placement in segregation), and the review board recommended continuing his administrative segregation,

2

which the warden approved. (ECF No. 1, at 17.) The plaintiff alleges that his continuing confinement in administrative segregation is in violation of department policy and his constitutional right to due process.

**III.    ANALYSIS**

To state a claim for procedural due process violation under § 1983, a plaintiff must establish that he had a protected liberty or property interest, and that the defendants deprived him of that interest without due process. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). In the prison context, protected liberty interests are limited to freedom from conditions that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The four months the plaintiff has allegedly remained on administrative segregation do not rise to that level. *See Bradley v. Evans*, 229 F.3d 1150, 2000 WL 1277229, at *5–7 (6th Cir. Aug. 23, 2000) (holding that 14 months in administrative segregation was not atypical and significant hardship). Plaintiff's segregation in maximum security for this period of time does not constitute a due process violation even if it prevents him from earning credits to reduce his sentence. *Id.*; *Randolph v. Campbell*, 25 F. App'x 261, 263 (6th Cir. 2001) ("The fact that the administrative segregation placement may have a negative implication on Randolph's opportunity to earn sentence reduction credits . . . is a collateral consequence of Randolph's placement in administrative segregation that is insufficient to create a liberty interest."); *Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992) (no constitutional right to earn sentence credits).

The fact that the plaintiff was not found guilty of a disciplinary offense in connection with his segregation does not alter this conclusion. It has been clearly established since 1976 that the constitution does not require prison authorities to find an inmate guilty of a disciplinary offense, or even to hold disciplinary proceedings, before reclassifying an inmate to maximum security based on his believed involvement in dangerous activity:

[I]t is argued that charges of serious misbehavior, as in this case, often initiate

> and heavily influence the transfer decision and that because allegations of misconduct may be erroneous, hearings should be held before transfer to a more confining institution is to be suffered by the prisoner. That an inmate's conduct, in general or in specific instances, may often be a major factor in the decision of prison officials to transfer him is to be expected unless it be assumed that transfers are mindless events. A prisoner's past and anticipated future behavior will very likely be taken into account in selecting a prison in which he will be initially incarcerated or to which he will be transferred to best serve the State's penological goals.
>
> A prisoner's behavior may precipitate a transfer; and absent such behavior, perhaps transfer would not take place at all. But, as we have said, Massachusetts prison officials have the discretion to transfer prisoners for any number of reasons. Their discretion is not limited to instances of serious misconduct. As we understand it no legal interest or right of these respondents under Massachusetts law would have been violated by their transfer whether or not their misconduct had been proved in accordance with procedures that might be required by the Due Process Clause in other circumstances.

*Meachum v. Fano*, 427 U.S. 215, 228 (1976) (finding no due process violation in transferring inmates from medium security facility to maximum security facility with "substantially less favorable" living conditions, without disciplinary proceedings or convictions, based on information indicating that they were involved in setting fires). Seven years later, the Supreme Court made clear that the same is true for placement in administrative segregation:

> It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence. The phrase "administrative segregation," as used by the state authorities here, appears to be something of a catchall: it may be used to protect the prisoner's safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer. Accordingly, administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration.

*Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (going on to hold that state regulations created liberty interest ).

Thus, even before *Sandin* was decided, it was clear that neither the constitution nor the Tennessee Department of Correction's policies would require a proven disciplinary violation as the basis for confinement to administrative segregation: "[E]ven if plaintiffs were able to show they had not committed the alleged rule violations, they are not secure against being placed in

ASDA because the prison officials could transfer them for any reason or no reason at all pursuant to the wide discretion afforded by the regulations governing classification." *Blizzard v. Watson*, 892 F. Supp. 587, 597 (D. Del. 1995); TDOC Policy 404.10.IV.A (providing for placement in administrative segregation based on belief "even if subjective" that inmate poses a threat to institutional security, and listing involvement in security threat group activities as circumstance warranting placement).[1] "[P]rison officials routinely impose such confinement for non-punitive reasons related to effective prison management." *Hatch v. D.C.*, 184 F.3d 846, 855 (D.C. Cir. 1999).

This became even clearer with *Sandin*. Before going on to reject the suggestion in *Meachum* and holding in *Hewitt* that mandatory language in state regulations could give rise to a liberty interest that the Due Process Clause does not independently provide, the *Sandin* Court confirmed *Hewitt*'s finding that the constitution itself does not require any process in connection with placement in administrative segregation:

> The Court made explicit in *Hewitt* what was implicit in *Greenholtz* [*v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1 (1979)]. In evaluating the claims of inmates who had been confined to administrative segregation, it first rejected the inmates' claim of a right to remain in the general population as protected by the Due Process Clause. The Due Process Clause standing alone confers no liberty interest in freedom from state action taken "within the sentence imposed."

*Sandin v. Conner*, 515 U.S. at 480 (quoting *Hewitt*, 459 U.S. at 468). The Court concluded that even placement in disciplinary segregation did not trigger a right to due process, in part because disciplinary segregation "mirrored those conditions imposed upon inmates in administrative segregation," which it said was "similar, but totally discretionary, confinement." *Sandin*, 515 U.S. at 486.

The plaintiff's complaint and attached documentation in this case indicate that he was transferred to a maximum security institution for administrative segregation based on his

---

[1] District courts may take judicial notice of published governmental policies and procedures. *See Kelleher v. Dream Catcher, L.L.C.*, No. 1:16-CV-02092 (APM), 2016 WL 7429396, at *2 (D.D.C. Dec. 23, 2016).

"confirmed" association with a security threat group and believed involvement in a violent incident in connection with that group, and that his placement has been reviewed at least once in the four months since his transfer. In the absence of any allegations that his current conditions of confinement are outside the broad range of conditions to which prison inmates can expect to be subjected, those facts do not state a claim for a constitutional violation.

## IV. CONCLUSION

Accordingly, this action is **DISMISSED**, without prejudice to the plaintiff's ability to refile if the conditions of his confinement reach the level of atypical and significant. 28 U.S.C. § 1915(e)(2)(B); *see Harris v. Caruso*, 465 F. App'x. 481, 484 (6th Cir. 2012) (eight years on administrative segregation gives rise to a liberty interest). Any appeal of this order would not be in good faith as required by 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE